**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JAMIE SHILLER, BRIAN KORNRUMPF, HALSEY RICHARTZ, AMNON MELZER, RYAN TREAT, GEOFF FRINK, JEREMY GRAINGER, RANDY CORAN, BRIAN DUBS, GUY ZILBER, CURTIS HALE, DIRK WEILER-THELEMANN, DARRELL SMITH, CHAD MIELKE, and ROBERT CHRISTIANSEN, | |
| Plaintiffs, | Case No. 1:25-CV-10287-MKV |
| v. | ORAL ARGUMENT REQUESTED |
| CHAD BARRAFORD, JOHN-PAUL THORBJORNSEN, and NINE REALMS, INC., | |
| Defendants. | |

**NINE REALMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD........................................................................................................... 10

ARGUMENT...................................................................................................................... 10

    I.    PLAINTIFFS DO NOT ALLEGE THAT NINE REALMS ENGAGED IN ANY
    MISCONDUCT. ....................................................................................................... 10

    II.    THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR FRAUD
    (COUNT II)............................................................................................................. 12

        A.    Plaintiffs Do Not Allege that Nine Realms Made Any Knowingly False Material
        Misrepresentations................................................................................................ 12

            1.    Nine Realms Did Not Make Any Misstatements. ....................................... 12

            2.    The Alleged Misstatements Were Not Material. ......................................... 15

        B.    Plaintiffs Fail to Plead a Strong Inference that Nine Realms Acted with Scienter. ... 16

        C.    Plaintiffs Do Not Allege that they Reasonably Relied on Any Misstatement or
        Omission Purportedly Made by Nine Realms. ....................................................... 16

        D.    Plaintiffs Cannot Allege that Nine Realms' Actions Caused Their Losses. .............. 19

    III.    THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR
    NEGLIGENT MISREPRESENTATION (COUNT III)................................................. 20

    IV.    THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR
    VIOLATIONS OF GBL §§ 349 or 350 (COUNT V)................................................ 21

    V.    THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR
    CONVERSION (COUNT I) ...................................................................................... 22

    VI.    THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR UNJUST
    ENRICHMENT (COUNT IV) ................................................................................... 24

    VII.    PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES............................ 25

CONCLUSION................................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................10

*Banque Franco-Hellenique de Com. Int'l et Mar., S.A. v. Christophides*,
   106 F.3d 22 (2d Cir. 1997)..............................................................................................17

*Basis PAC-Rim Opportunity Fund (Master)* v. *TCW Asset Mgmt. Co.*,
   149 A.D.3d 146 (1st Dep't 2017) ....................................................................................19

*Bayne v. Target Corp.*,
   630 F. Supp. 3d 544 (S.D.N.Y. 2022)........................................................................12, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................23

*Bilinski* v. *Keith Haring Found., Inc.*,
   96 F.Supp.3d 35 (S.D.N.Y. 2015) ..................................................................................25

*Boghossian v. Capella Univ., LLC*,
   No. 24-CV-3007 (VEC), 2025 WL 934878 (S.D.N.Y. Mar. 27, 2025) ...................................14

*Boka v. Shafer*,
   No. 15 CIV. 6629, 2016 WL 3866593 (S.D.N.Y. July 13, 2016) ..........................................12

*Bynum v. Fam. Dollar Stores, Inc.*,
   592 F. Supp. 3d 304 (S.D.N.Y. 2022)........................................................................12, 16

*Celestin v. Martelly*,
   698 F. Supp. 3d 443 (E.D.N.Y. 2023) .............................................................................22

*Cosgrove v. Or. Chai, Inc.*,
   520 F. Supp. 3d 562 (S.D.N.Y. 2021)..............................................................................21

*Daly v. Castro Llanes*,
   30 F. Supp. 2d 407 (S.D.N.Y. 1998)....................................................................10, 22, 23

*DiVittorio* v. *Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987)..........................................................................................15

*Edmar Fin. Co., LLC v. Currenex, Inc.*,
   No. 21-CV-6598 (LAK), 2023 WL 3570017 (S.D.N.Y. May 18, 2023) ...............................24

*Elma RT v. Landesmann Int'l Mktg. Corp.*,
   No. 98 CIV. 3662 LMM, 2000 WL 297197 (S.D.N.Y. Mar. 22, 2000)..................................25

*Eng.* v. *Danone N. Am. Pub. Benefit Corp.*,
   678 F. Supp. 3d 529 (S.D.N.Y. 2023)..................................................................................21

*In re Fyre Festival Litig.*,
   399 F. Supp. 3d 203 (S.D.N.Y. 2019)..................................................................................17

*Garber v. Legg Mason, Inc.*,
   347 F. App'x 665, 668 (2d Cir. 2009)..................................................................................15

*Gardner* v. *Sensio Inc.*,
   645 F. Supp. 3d 310 (S.D.N.Y. 2022)..................................................................................16

*GateGuard, Inc. v. Amazon.com Inc.*,
   No. 21-CV-9321 (JGK), 2023 WL 2051739 (S.D.N.Y. 2023)................................................24

*Goodman v. Bd. of Managers of Harborview Condo.*,
   No. 22-CV-1813 (CS), 2023 WL 6977450 (S.D.N.Y. Oct. 23, 2023) ...................................11

*Hao Zhe Wang v. Verizon Commc'ns Inc.*,
   No. 19-CV-9506 (JMF), 2020 WL 5982882 (S.D.N.Y. Oct. 8, 2020)....................................11

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018)..................................................................................17

*Honig* v. *Hansen*,
   No. 20 CIV. 5872 (AKH), 2021 WL 4651475 (S.D.N.Y. Oct. 6, 2021)................................15

*IKB Int'l S.A.* v. *Bank of Am. Corp.*,
   584 F. App'x 26 (2d Cir. 2014) ...........................................................................................16

*Kirschner v. Bennett*,
   648 F. Supp. 2d 525 (S.D.N.Y. 2009)..................................................................................22

*Knapp v. Maron*,
   No. 14-CV-10121 (NSR), 2016 WL 2851563 (S.D.N.Y. May 12, 2016)...............................23

*Kominis* v. *Starbucks Corp.*,
   692 F. Supp. 3d 236 (S.D.N.Y. 2023)..................................................................................10

*Laub v. Faessel*,
   297 A.D.2d 28 (1st Dep't 2002) ..........................................................................................19

*Manning v. City of New York*,
   No. 23 CIV. 2352 (LGS), 2024 WL 3480437 (S.D.N.Y. July 19, 2024)...............................23

*In re Merrill, Bofa, & Morgan Stanley Spoofing Litig.*,
No. 19-CV-6002 (LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) .....................................24

*Miller v. Wells Fargo Bank, N.A.*,
994 F. Supp. 2d 542 (S.D.N.Y. 2014) ...................................................................................22

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993) ..................................................................................................11

*Miramontes v. Ralph Lauren Corp.*,
2023 U.S. Dist. LEXIS 78991 (S.D.N.Y. May 5, 2023) ........................................................21

*Mullen v. Terran Orbital Operating Corp.*,
No. 23-CV-1394 (JMF), 2024 WL 3553134 (S.D.N.Y. July 26, 2024) ...................................4

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*,
165 F. Supp. 2d 514 (S.D.N.Y. 2001) ...................................................................................13

*Negrete* v. *Citibank, N.A.*,
237 F. Supp. 3d 112 (S.D.N.Y. 2017), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) ........................17

*Olson* v. *Major League Baseball*,
29 F.4th 59 (2d Cir. 2022) ....................................................................................................12

*Reca v. Flashdot Ltd.*,
No. 1:24-CV-6316-GHW, 2026 WL 82702 (S.D.N.Y. Jan. 12, 2026) ...................................23

*Singhal* v. *Doughnut Plant, Inc.*,
No. 20-CV-3295 (ALC), 2022 WL 976885 (S.D.N.Y. Mar. 31, 2022) .....................................3

*Snowbridge Advisors LLC* v. *ESO Cap. Partners UK LLP*,
589 F.Supp.3d 401 (S.D.N.Y. 2022)......................................................................................24

*Stephenson v. Citco Grp. Ltd.*,
700 F. Supp. 2d 599 (S.D.N.Y. 2010) ...................................................................................16

*Tears v. Bos. Sci. Corp.*,
344 F. Supp. 3d 500 (S.D.N.Y. 2018) ...............................................................................20, 21

*Town of Haverstraw v. Columbia Elec. Corp.*,
237 F. Supp. 2d 452 (S.D.N.Y. 2002) ...................................................................................25

*Velez* v. *Lasko Prods., LLC*,
706 F. Supp. 3d 444 (S.D.N.Y. 2023).....................................................................................25

*Wheeler v. Topps Co., Inc.*,
652 F. Supp. 3d 426 (S.D.N.Y. 2023).....................................................................................10

4

*Whiddon v. Buzzfeed, Inc.*,
    638 F. Supp. 3d 342 (S.D.N.Y. 2022).. ...............................................................................4

*Woodhams v. Allstate Fire & Cas. Co.*,
    748 F. Supp. 2d 211 (S.D.N.Y. 2010).......................................................................12, 14, 15

*Wright v. Publishers Clearing House, Inc.*,
    439 F. Supp. 3d 102 (E.D.N.Y. 2020) ...............................................................................22

**Statutes**

N.Y. Gen. Bus. Law § 349................................................................................................ *passim*

N.Y. Gen. Bus. Law § 350................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 8..............................................................................................................11

Fed. R. Civ. P. 9(b) ....................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

Nine Realms, Inc. ("Nine Realms") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint (ECF No. 50) ("SAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). The claims against Nine Realms should be dismissed with prejudice for the reasons set forth herein and for the reasons in Defendant Chad Barraford's Memorandum of Law in Support of his Motion to Dismiss the Second Amended Complaint ("Barraford Br."), which Nine Realms hereby incorporates by reference.

**PRELIMINARY STATEMENT**

Plaintiffs seek to hold Nine Realms—a protocol service provider and node operator—responsible for losses they sustained on THORChain, a decentralized blockchain protocol designed to allow users to exchange crypto assets without a centralized intermediary. Control of THORChain's network is distributed across many unrelated participants, i.e., approximately 100 validator Nodes ("Nodes") (SAC ¶66), to ensure no single person or entity can control transactions, funds, or network decisions. SAC ¶26 n.7. Nine Realms is a service provider to THORChain that implements programs and updates at the direction of the Nodes after a 67% majority vote approving the proposed action.

Plaintiffs' claims arise out of their participation in two programs built on THORChain: Savers and Lending (collectively "THORFi"). Plaintiffs allege that statements that they relied upon before participating in either program were revealed to be false on January 9, 2025, when Defendant Thorbjornsen unilaterally used an administrative key ("Admin Mimir") to pause the THORFi programs. Thorbjornsen's action was swiftly overridden by 67% majority vote of the Nodes that same day. Thereafter, both Savings and Lending operated as normal until January 24, 2025, when the Nodes voted to pause the programs. Plaintiffs made no attempt to withdraw their assets during this period. Following that pause, after community discussion, the Nodes elected a

1

path forward in the form of "Proposal 6." Plaintiffs are apparently dissatisfied with the resolution approved by the Nodes, and bring this lawsuit seeking a different outcome. But Plaintiffs' attempt to hold Nine Realms liable for these events is fundamentally misguided for several reasons:

*First,* the three statements attributed to Nine Realms do not support Plaintiffs' claims. The first—a November 2022 statement that "[t]here is no person, group, or entity that can unilaterally control user funds on THORChain"—was borne out by events: within 7 hours of Thorbjornsen's unilateral halt of THORFi, the Nodes overruled his action, unfreezing both programs. The second—a November 2022 post on X describing THORChain as a "decentralized, native asset" platform being scaled—is similarly accurate as demonstrated by the actions of the Nodes, and is also forward-looking, aspirational language that cannot form the basis of a fraud claim. The third— a January 24, 2025 X post reporting that the THORFi programs had been "temporarily paused" following a Node vote—was accurate at the time it was made, and Plaintiffs do not allege that Nine Realms knew otherwise. Beyond these three statements, Plaintiffs' fraud allegations rest on impermissible group pleading that vaguely attributes conduct to "Defendants" collectively, without differentiating Nine Realms' role from that of other parties.

*Second*, the SAC fails to establish any of the other elements of a fraud claim. The crux of Plaintiffs' claim is that Thorbjornsen's use of the Admin Mimir key on January 9, 2025, "revealed" that THORChain was not decentralized, and that other promises made by the Defendants were false. But, by Plaintiffs' own admission, the existence of Admin Mimir *was* publicly disclosed. And Plaintiffs' losses were caused not by anything Nine Realms said or did, but by a series of independent intervening events, including Thorbjornsen's unilateral use of Admin Mimir and the Nodes' subsequent governance decisions. And critically, once the alleged fraud was revealed,

2

Plaintiffs made no attempt to remove their assets from THORFi, even though the programs remained open for withdrawals for over two weeks thereafter.

*Third,* Plaintiffs' remaining claims fail for the same reasons, among others. Plaintiffs' negligent misrepresentation claim also fails because there is no allegation of a special relationship between Nine Realms and any Plaintiff. The GBL §§ 349 and 350 claims fail absent a transactional nexus to New York. The conversion claim fails because the SAC does not allege that Nine Realms exercised unauthorized dominion or control over Plaintiffs' funds. In fact, the SAC demonstrates that the Nodes controlled the relevant decisions about the assets. Finally, the unjust enrichment claim fails because the SAC does not allege any direct dealings between Plaintiffs and Nine Realms, and does not allege that Plaintiffs' participation in THORFi enriched Nine Realms directly.

For all of these reasons, and as set forth more fully below, the Court should dismiss the SAC as against Nine Realms in its entirety, with prejudice.

## **BACKGROUND**[1]

THORChain is a blockchain protocol co-created by Barraford and Thorbjornsen in 2018. It was built to facilitate the exchange of crypto assets, which is accomplished using predetermined code, rather than by a centralized intermediary, such as a bank. ECF No. 50-1 ("Pl. Dec.") ¶¶14, 15. It is secured by about 100 Nodes (SAC ¶ 66), which validate and approve transactions that take place on the blockchain. *Id.* ¶74. Nodes operate to maintain the hardware and software infrastructure that verifies transactions, produces new blocks, and secures the network. *Id.* ¶26 n.7. Nodes are owned by various individuals or entities that have staked significant RUNE to obtain each Node. *Id.* ¶172. Nodes earn fees based on the processing of transactions on THORChain. *Id.*

---

[1] Nine Realms assumes that the facts alleged in the SAC are true solely for the purposes of this motion to dismiss. *See Singhal* v. *Doughnut Plant, Inc.*, No. 20-CV-3295 (ALC), 2022 WL 976885, at *1 (S.D.N.Y. Mar. 31, 2022).

¶26 n.7. System upgrades, including the implementation of new features must be approved by 67% of the Nodes before the update can go live. *Id*. ¶27. Plaintiffs participated in one of two programs on THORChain: Savers or Lending (collectively, "THORFi"). *Id*. ¶¶8, 35.

Nine Realms was a THORChain service provider from 2021[2] to 2026.[3] During its tenure, Nine Realms' work for the protocol included maintenance of THORChain's infrastructure, and planning and testing releases of updates to the protocol. *Id.* ¶61. Nine Realms did not make unilateral decisions to implement system upgrades, and instead only implemented updates with 67% of Nodes' approval, which is publicly verifiable. *Id.* ¶27. Nine Realms was compensated for development and upgrade work via a percentage of blockchain transaction fees.[4] *Id.* ¶7.

**The Savers and Lending Programs on THORFi**

In November 2022, THORChain launched the Savers program, and in August 2023, THORChain launched the Lending program. *Id.* ¶8. Both programs were launched "within the scope of [THORChain's] governance structure"—i.e., following approval by the Nodes. *Id.* ¶92.[5] Savers "allowed users to earn yield" by depositing digital assets "into the network in exchange for synthetic assets, which could then be deposited into a Savings Vault." *Id.* ¶109. THORChain's website states Savers "can deposit native assets like Bitcoin, earn yield in-kind, and withdraw their principal at any time, all while maintaining full control of their keys." *Id.* ¶13. THORChain also notes that "Savers Vaults [a]re not risk-free. Although Savers [has been] designed to mitigate risk,

---

[2] Plaintiffs allegation that Nine Realms existed in 2018 (SAC ¶8) is contradicted by its certificate of incorporation (*see* Declaration of Simon Morris ("Morris Dec."), filed herewith, Ex. A),  which is judicially noticeable. *Mullen v. Terran Orbital Operating Corp.*, No. 23-CV-1394 (JMF), 2024 WL 3553134, at *8 (S.D.N.Y. July 26, 2024). Allegations contradicted by judicially noticed facts are not credited. *Id.* at *3 n.2.

[3] In March 2026, Nine Realms announced its transition from its role as a service provider to THORChain. SAC ¶ 61. Its responsibilities have been handed over to various unrelated service providers.

[4] *See ADR 18: Core Protocol Sustainability*, THORChain Developer Documents, https://dev.thorchain.org/architecture/adr-018-core-protocol-sustainability.html (last visited Apr. 17, 2026). Plaintiffs cite to dev.thorchain.org (and many websites) to support their claims, so this domain (and others) are incorporated by reference into the SAC. *See Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342, 349 (S.D.N.Y. 2022).

[5] Morris Dec., Ex. E (67% Node consensus reached for Savers); *id.*, Ex. F (same for Lending).

the possibility of loss could not be eliminated completely. It [is] the user's responsibility to be aware of the risks before entering a Savers Vault."[6]

To participate in Lending, "[w]hen lenders provided assets such as BTC or ETH to THORFi, the funds were converted into RUNE," the native digital asset of THORChain. Pl. Dec. ¶45. "RUNE would be burned once it was swapped for the borrower's desired cryptocurrency." *Id.* ¶46. "[O]nce the loan was paid back, additional RUNE was minted to repurchase the original collateral." *Id.* ¶47. To enable Lending "RUNE is swapped to the borrowed asset via the liquidity pools, then sent to the borrower." Pl. Dec. ¶49 n.26. THORChain's website said that Lending users "always had the right to have their returned collateral if they repaid the loan"[7] and a *Medium* article about Lending said that loans were "no liquidations, no interest, and no expiration."[8] In that same *Medium* article, there is a section titled "Risk," that explains that prior to the launch of Lending, "Block Science [a third party systems engineering, and analytics firm[9]] performed a comprehensive report on the risks of [Lending]" and links directly to the report ("Report").[10] This publicly-available Report outlined the "failure states" of Lending to include, among others, the risks that borrowers "can't get back their capital" or "[b]orrowers get back their capital at a huge discount."[11] The Report details the risk of RUNE depreciation affecting the "ability to repay collateral," which is the exact situation that precipitated the events described in the SAC.[12]

---

[6] *See Savers FAQ (Deprecated)*, THORChain Documents, https://docs.thorchain.org/thornodes/archived/savers-faq (last visited Apr. 17, 2026); Morris Dec., Ex. C (Discord commentary regarding the issues the Savers could create, including RUNE instability, prior to launch).

[7] *See Lending (Deprecated)*, THORChain Documents, https://docs.thorchain.org/thornodes/archived/lending (last visited Apr. 20, 2026).

[8] Nine Realms, *Lending on THORChain*, Medium, https://medium.com/thorchain/lending-on-thorchain-646bbf2e6e1b (last visited Apr. 20, 2026) (hereinafter "*Lending on THORChain*"); *see also* SAC ¶¶117-118.

[9] *BlockScience*, https://block.science/ (last visited Apr. 17, 2026).

[10] *Lending on THORChain*, *supra* note 8; *see also* SAC ¶117 n.29.

[11] *THORChain Risk Report,* BlockScience, https://hackmd.io/@blockscience/H1Q-erh_n/%2FFpdB2Ap2Sdm2g5eX2VNrSg (last visited Apr. 20, 2026).

[12] *Id.*

Both before and after the launch of Savers and Lending, there were ongoing discussions within the THORChain community regarding the potential vulnerabilities of the programs. Pl. Dec. ¶23. Eventually, "[i]n late 2024, THORFi began to unravel" in part due to "its dependence on RUNE." SAC ¶25. On January 9, 2025, in the wake of "significant volatility" in RUNE's value (Pl. Dec. ¶24), Thorbjornsen "unilateral[ly]" used Admin Mimir to "disable[] Plaintiffs' ability to withdraw assets from THORFi Savers and close loans in THORFi Lending." SAC ¶152. Seven hours later, the Nodes voted to override Thorbjornsen's action, thereby reinstating the withdrawal function on both programs. *Id.* ¶159; Pl. Dec. ¶30.[13] The following day, *Bitcoin Magazine* published an article titled "Why You May Want to Redeem Your Bitcoin From THORChain's Lending Service," explaining "that the platform likely had insufficient BTC to repay lenders due to the price fluctuations in BTC and lacking liquidity." Pl. Dec. ¶33. Thereafter, "RUNE continued to see price instability." *Id.* ¶34. There is no allegation that any Plaintiff tried to withdraw their assets from THORFi at this time. Both the Savings and Lending programs on THORChain continued to operate from January 9, 2025 until January 24, 2025, when the Nodes voted to pause the programs once again to mitigate additional losses. SAC ¶¶26-27. At that time, the pools did not contain enough liquidity to cover the outstanding THORFi liabilities. *Id.* ¶171.

Following the January 24, 2025 pause, the THORChain community collaborated, publicly, to devise, agree, build and deploy a solution to THORFi's liquidity problem. Pl. Dec. ¶38. "[C]ommunity members submitted…[n]umerous proposals" for how to correct the program's failure and compensate the users. *Id.* Ultimately, eight distinct proposals were submitted, including a proposal from Nine Realms, which would have allowed THORFi participants to recover a portion

---

[13] *THORFi Unwind*, Medium, https://medium.com/thorchain/thorfi-unwind-96b46dff72c0 (last visited Apr. 17, 2026).

6

of the remaining funds,[14] and a proposal from the THORChain community called "Proposal 6." *Id.* ¶40. Under Proposal 6, THORChain would "issu[e] a new token, TCY," which would entitle THORFi participants to 10% of future THORChain network swap fees in perpetuity to compensate users for lost funds. *Id.* ¶55; SAC ¶180. Proposal 6 also called for the elimination of THORFi. SAC ¶180. On February 3, 2025, the Nodes voted to accept Proposal 6. *Id.* Plaintiffs are dissatisfied with the solution developed by the community and approved by the Nodes in accordance with protocol governance (Pl. Dec. ¶¶38, 40), calling it a "sham." SAC ¶¶32, 185.

On February 10, 2025, following backlash about Thorbjornsen's misuse of the Admin Mimir key (SAC ¶156), THORChain posted to X that the "Admin Mimir" function was "removed from the network" and "Nodes have full control over all network parameters." *Id.* ¶175. Like all major system changes on THORChain, this update was the result of 67% Node consensus.[15]

**Plaintiffs' Allegations of Fraud**

The SAC asserts claims for fraud, negligent misrepresentation, violations of GBL §§ 349 and 350, conversion, and unjust enrichment against all Defendants, including Nine Realms, stemming from allegations of certain knowing misrepresentations regarding the Savers and Lending programs. *Id.* ¶¶1, 34. Most of Plaintiffs' allegations of fraud fail to distinguish between different Defendants, or are attributed generally to non-party THORChain.[16] Plaintiffs cite only three statements they allege are attributed to Nine Realms:

---

[14] *See GitLab Snippet No. 4801269*, GitLab, https://gitlab.com/-/snippets/4801269 (last visited Apr. 17, 2026) (describing Nine Realms "9R" proposal); *GitLab Snippet No. 4801556*, GitLab, https://gitlab.com//snippets/4801556 (last visited Apr. 17, 2026) (describing Proposal 6).

[15] *Merge Request No. 3886*, GitLab, https://gitlab.com/thorchain/thornode/-/merge_requests/3886 (last visited Apr. 17, 2026) (press release regarding removal of Admin Mimir); https://discord.com/channels/838986635756044328/906262316457263144/1338370845516628040 (alert system noting the vote had reached 67% approval for version 3.2 release containing the remove Admin Mimir function).

[16] THORChain, an alleged "unincorporated association," was originally a defendant in the lawsuit (ECF No. 23), but Plaintiff did not plead the citizenship of its members as required for diversity jurisdiction. Thereafter, the Court issued an order to show cause as to why the matter should not be dismissed (ECF No. 26). Plaintiffs then filed the Amended

- The first is from a *Medium* article on November 15, 2022, authored by Nine Realms, stating that "[t]here is no person, group, or entity that can unilaterally control user funds on THORChain." *Id.* ¶112.

- The second is from a November 29, 2022 Nine Realms' X post: "Our industry needs decentralized, native asset rails for swapping, risk management, and settlement. This is exactly what @THORChain is designed for. It works, and we are scaling it." *Id.* ¶113.

- The third is from a January 24, 2025 Nine Realms' X post: "1/ THORChain is operating as normal. Following a vote by node operators, redemptions for THORFi Lending and Savers products have been temporarily paused...." *Id.* ¶164.

According to the SAC, the first two representations were revealed to be false on January 9, 2025, when Thorbjornsen exercised the Admin Mimir key, an administrative key within a blockchain protocol's code that "can override or alter the parameters of the protocol." Pl. Dec. ¶26 n.12. But while the SAC posits that the existence of an administrative key demonstrates that the platform was not "decentralized" (*see, e.g.,* SAC ¶¶118, 120), it also notes that the Admin Mimir key has existed since on or about the inception of the THORChain protocol. SAC ¶120 n.34.[17] Like other nascent protocols, THORChain required the use of an Admin Mimir to safely operate by allowing "new THORFi features to each undergo safe launches."[18] Admin Mimir was openly used to switch on code that had been released (but was not yet activated) in a software update,[19] and was used to swiftly pause the protocol in response to potential threats to the network.[20] And contrary to Plaintiffs' suggestion that the existence of Admin Mimir was hidden in technical documents (SAC

---

Complaint and a certification of counsel explaining THORChain had been removed as a defendant to "avoid[] the need for the Court to adjudicate complex and uncertain questions concerning [its] citizenship." ECF No. 32.

[17] *See* DataFinnovation-ChainArgos-4AC, *Hammering THORChain: It's Totally Centralized With Hard-Coded Admin Keys*, Medium, https://medium.com/chainargos/hammering-thorchain-its-totally-centralized-with-hard-coded-admin-keys-15a8876e149a (last visited Apr. 17, 2026) (hereinafter "*Hammering THORChain*").

[18] THORChain, *Asgard Awaits – THORChain to cross the chasm*, Medium, https://medium.com/thorchain/asgard-awaits-thorchain-must-cross-the-chasm-446d6e854ec0 (last visited Apr. 17, 2026) (hereinafter "*Asgard Awaits*").

[19] *See, e.g.,* Morris Dec., Ex. D (describing that after 2/3 majority of the Nodes is reached, the Admin Mimir will be used to enable Savers); *id.*, Ex. E (confirming the Savers update was approved by the Nodes).

[20] *Hammering THORChain*, *supra* note 17 (noting that Admin Mimir had been used to pause the network and citing an article that explains pauses were due to "reports of a potential vulnerability" that could affect the network) (citing Helen Partz, *THORChain mainnet halted amid new vulnerability reports*, Cointelegraph, https://cointelegraph.com/news/thorchain-mainnet-halted-amid-new-vulnerability-reports (last visited Apr. 17, 2026)).

¶22), the SAC's own source (a published article) confirms that Admin Mimir was evident "if anyone were to look for a few moments."[21]

Plaintiffs allege that, after the Nodes promptly voted to override Thorbjornsen's freeze, Defendants retained the ability to "permit Ragnarok," which the SAC describes as "THORChain's emergency shutdown and asset-return mechanism that unwinds the network and returns all remaining user funds from its liquidity pools, and lending positions back to depositors." SAC ¶176. Plaintiffs allege that when Ragnarök is triggered "[a]ll funds are automatically returned to users." *Id.* The sources cited within the SAC, however, emphasize the extremely limited circumstances in which Ragnarök was designed to be "triggered," all of which relate to the underlying liquidity pools of the protocol, rather than the Savers or Lending programs. For example, Ragnarök can be activated when "[n]odes begin to leave the system…[w]hen fewer than 4 nodes remain."[22] Plaintiffs do not allege that any of the circumstances that trigger Ragnarök occurred here. And most importantly, Plaintiffs' *own cited materials* demonstrate that *Ragnarök cannot be unilaterally triggered by Defendants* as it is a command that cannot be executed by the Admin Mimir.[23] In fact, modification of "economic parameters"[24] requires 67% Node approval. Admin Mimir "*can not access funds*."[25]

---

[21] *Id.*

[22] *Governance*, THORChain Documents, https://docs.thorchain.org/technical-documentation/technical-deep-dive/governance (last visited Apr. 20, 2026). This limited use case is reiterated elsewhere in THORChain's materials. *See RUNE*, ThorChain Documents, https://docs.thorchain.org/technical-documentation/understanding-thorchain/rune (last visited Apr. 17, 2026) ("[I]f a connected chain is no longer economically valuable, then all liquidity providers in that chain can leave. If a pool is empty, it will be delisted, and this will cause the network to immediately sever ties with that chain in a process call a 'ragnarok.'").

[23] *See Hammering THORChain*, *supra* note 17 (showing Ragnarök listed as a function that cannot be executed by Admin Mimir by virtue of the "adminMimirDenyList").

[24] *Network Security and Governance*, THORChain Documents, https://docs.thorchain.org/network-security-governance (last visited Apr. 17, 2026).

[25] *Asgard Awaits*, *supra* note 18 (emphasis added).

In January 2025, THORChain's Nodes engaged in an "actively governed system" where they considered the eight Proposals. These proposals were variations of "3 options" for a path forward: "1) Do nothing and let a small amount of users take all the funds… 2) Shut the protocol down and let everyone get 20c on their dollar back…[or] 3) Keep the protocol running with the optimistic view to repay everyone in full after some time." Pl. Dec. ¶44. By voting for and adopting Proposal 6, the Nodes chose option "3." SAC ¶180. Where Plaintiffs would have apparently preferred that the Nodes choose option "2," they are free to "campaign nodes at any time" to make a different choice. Pl. Dec. ¶44. It does not follow, however, that "Defendants" are somehow liable for failing to take (impossible) unilateral action to override the Nodes' decision.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "need not consider conclusory allegations or legal conclusions couched as factual allegations in deciding a motion to dismiss." *Wheeler v. Topps Co., Inc.*, 652 F. Supp. 3d 426, 435 (S.D.N.Y. 2023). Plaintiffs' claims, which sound in fraud, require them to "state with particularity the circumstances constituting fraud." *Kominis* v. *Starbucks Corp.*, 692 F. Supp. 3d 236, 254 (S.D.N.Y. 2023) (fraud claim failed to satisfy Rule 9(b)); *e.g.*, *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (claims that sound in fraud must comply with Rule 9(b)).

## ARGUMENT

### I.   PLAINTIFFS DO NOT ALLEGE THAT NINE REALMS ENGAGED IN ANY MISCONDUCT.

As a threshold matter, Plaintiffs' claims against Nine Realms fail because Plaintiffs do not allege that Nine Realms engaged in *any* of the allegedly manipulative tactics underlying their claims. There are no allegations that Nine Realms, for example, took any actions that deprived

10

Plaintiffs of their assets (SAC ¶¶152-158); engaged in a "pattern of self-dealing and misuse of investor assets" (*id.* ¶¶193-194), or was otherwise compensated for THORFi in any way beyond its standard compensation as a protocol service provider and Node operator. Indeed, the Defendant accused of such misconduct (*id.* ¶¶193-194)[26] has not appeared in this action.

Instead, the SAC shows that Nine Realms' involvement with THORFi was in its capacity as a service provider, approved by the Nodes. SAC ¶61. Plaintiffs are, in essence, attempting to hold Nine Realms liable for providing technical support and software upgrades for the THORChain blockchain.

Plaintiffs' group pleading that lumps Nine Realms in with other Defendants for purposes of describing the alleged fraudulent conduct does not save their claims. Courts routinely dismiss claims based on similar group pleadings under Federal Rules of Civil Procedure 8 and 9. *See Goodman v. Bd. of Managers of Harborview Condo.*, No. 22-CV-1813 (CS), 2023 WL 6977450, at \*5 (S.D.N.Y. Oct. 23, 2023) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim [under Rule 8(a)]") (citation omitted); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

Further, Plaintiffs seek recovery for non-party "THORChain's" actions, which cannot be attributed to Nine Realms. Where Plaintiffs fail to distinguish between the alleged conduct of Barraford, Thorbjornsen, THORChain, and Nine Realms, and make no allegations that would permit the Court to disregard corporate distinctions, the SAC fails to state a claim against Nine Realms based upon the alleged misstatements of others. *See Hao Zhe Wang v. Verizon Commc'ns Inc.*, No. 19-CV-9506 (JMF), 2020 WL 5982882, at \*2 (S.D.N.Y. Oct. 8, 2020).

---

[26] These allegations vaguely loop in "his associates" without any attempt to define that term or facts to demonstrate concerted acts with any other Defendants.

## II.    THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR FRAUD (COUNT II).

To state a claim for fraud, a plaintiff must allege "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 316 (S.D.N.Y. 2022).

### A.    Plaintiffs Do Not Allege that Nine Realms Made Any Knowingly False Material Misrepresentations.

First, Plaintiffs have not pled any material misrepresentation or omission by Nine Realms. In order to plead a material misstatement with the required particularity, Plaintiffs must (1) detail the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *See Olson* v. *Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). Because Plaintiffs' fraud claims are asserted against multiple Defendants, the allegedly "[f]raudulent statements or conduct must be attributed to each defendant individually." *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 222 (S.D.N.Y. 2010). Omissions also require allegations sufficient to plead the existence of a duty to disclose. *Bayne v. Target Corp.*, 630 F. Supp. 3d 544, 553 (S.D.N.Y. 2022).

### 1.    Nine Realms Did Not Make Any Misstatements.

Plaintiffs allege three "misstatements" are attributable to Nine Realms, all of which fail to satisfy this exacting standard.

*First*, the SAC references a *Medium* article allegedly published by Nine Realms that states that "[t]here is no person, group, or entity that can **unilaterally control** user funds on THORChain." SAC ¶112 (emphasis added) ("**Statement One**"). As an initial matter, Plaintiffs have not adequately plead why this statement is false, which is fatal to their claim. *See Boka v. Shafer*, No. 15 CIV. 6629, 2016 WL 3866593, at *8 (S.D.N.Y. July 13, 2016). To the extent that Plaintiffs

12

contend that the statement is false because Thorbjornsen utilized the Admin Mimir on January 9, 2025, to pause the protocol, the events that followed emphasize the veracity of Nine Realms' statement: within 7 hours of Thorbjornsen's use of Admin Mimir for an unauthorized purpose, the Nodes voted to overrule his action, unfreezing withdrawals for Savers and Lending. SAC ¶26. This collective action underscores the Nodes' decentralized control. Every subsequent action has been approved by the Nodes, including (1) freezing THORFi once again on January 24, 2025 (*id.* ¶27); and (2) adopting Proposal 6 on February 3, 2025. *Id.* ¶180. The Nodes' swift reversal of Thorbjornsen's unilateral <u>action</u> underscores that Thorbjornsen did not have unilateral <u>control</u>.

*Second,* the SAC describes a November 29, 2022 post on X, which stated: "Our industry needs decentralized, native asset rails for swapping, risk management, and settlement. This is exactly what @THORChain is designed for. It works, and we are scaling it." SAC ¶113. ("**Statement Two**"). As an initial matter, this statement—made shortly after Savers was launched—is true for the same reasons Statement One is: the Nodes control the actions of THORChain. Second, it is also an aspirational statement regarding what the blockchain may be able to accomplish at scale. Statements like these, that "do not set forth a concrete representation as to … future performance[], are in the nature of commercial puffery and cannot form the basis for a fraud claim…." *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 530 (S.D.N.Y. 2001).

*Third,* Plaintiffs point to a January 24, 2025 post that Nine Realms made on X, following the Nodes' vote to suspend withdrawals for THORFi, which reads: "1/ THORChain is operating as normal. Following a vote by node operators, redemptions for THORFI Lending and Savers products have been temporarily paused…." (SAC ¶164) ("**Statement Three**"). Plaintiffs allege that the statement was false because the pause was later determined not to be temporary. SAC

13

¶¶163-165. But there is no allegation that Nine Realms knew the pause would be more than temporary at the time that the statement was made. And, despite Plaintiffs' efforts to cherry pick one sentence out of a five-message chain, a review of Nine Realms' entire statement reveals that it was substantially correct. Indeed, read in context, it is clear that the Savers and Lending were "temporarily paused" while the THORChain community determined what to do next. *See* Morris Dec. ¶3. By Plaintiffs' own allegations, this is exactly what happened: (i) on January 24, 2025 (when the original X post was made), the Nodes chose to pause the programs once again (SAC ¶27); (ii) thereafter the THORChain community "align[ed] on a comprehensive plan" through "[d]iscussions and proposals" (Morris Dec., Ex. B); and (iii) on February 3, 2025, the Nodes chose a "path forward" by voting to accept Proposal 6, which resulted in Lending and Savers remaining frozen (Morris Dec., Ex. B; SAC ¶¶180, 192).[27]

Plaintiffs also assert, without specifying the speaker, that "Defendants" made a series of misstatements, including other statements concerning (i) the characteristics of the Savers and Lending programs; (ii) the risk of loss due to RUNE volatility; (iii) the characteristics of RUNE; and (iv) the decentralization of THORChain. But, contrary to Plaintiffs' assertions, the risks inherent in THORFi were disclosed and readily available to Plaintiffs. *See generally* Barraford Br. And regardless, Plaintiffs do not allege that Nine Realms made these statements but instead "vaguely attribute[] the alleged fraudulent statements to 'defendants.'" *Woodhams*, 748 F. Supp.

---

[27] Plaintiffs' fraud claim against Nine Realms should be dismissed to the extent it is based on material omissions, including the purported concealment of Admin Mimir and the resulting "centralized control." SAC ¶120. The SAC does not allege that Nine Realms had a duty to disclose the allegedly omitted information. First, there is no fiduciary duty between Nine Realms and Plaintiffs. *See Bayne*, 630 F. Supp. 3d at 553. Further, as Plaintiffs concede (SAC ¶22), the existence of Admin Mimir was publicly disclosed and was therefore not within the "superior knowledge" of Nine Realms. *Boghossian v. Capella Univ., LLC*, No. 24-CV-3007 (VEC), 2025 WL 934878, at *9 (S.D.N.Y. Mar. 27, 2025).

2d at 222. This type of group pleading does not state a claim. *See DiVittorio* v. *Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

### 2.     The Alleged Misstatements Were Not Material.

Plaintiffs also fail to adequately plead that any of Nine Realms' alleged misrepresentations were material—that is, that the statements would "have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Honig* v. *Hansen*, No. 20 CIV. 5872 (AKH), 2021 WL 4651475, at *5 (S.D.N.Y. Oct. 6, 2021) (citation omitted). This total mix may include "information already in the public domain and facts known or reasonably available to the [customer]." *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 668 (2d Cir. 2009) (citation omitted).

To the extent that Plaintiffs contend that Statements One and Two were false because THORChain was not, in fact, "decentralized," then the purported falsity of the statements was revealed to Plaintiffs on January 9, 2025, when Thorbjornsen used Admin Mimir to freeze Savings and Lending withdrawals. SAC ¶26. Later that same day, the Nodes voted to override Thorbjornsen and "unfreeze" the programs. *Id.* If Nine Realms' alleged misrepresentations had, in fact, been material to Plaintiffs' investment decision, they would have withdrawn their assets as soon as the alleged "fraud" was revealed to them on January 9, 2025, but they did not.

Statement Three could not be material, as the statement was made after the Nodes voted to freeze the protocol on January 24, 2025. Whether Nine Realms categorized the freeze as "temporary" or "permanent" is of no consequence, since Plaintiffs (i) had already made the decision to invest in THORFi in the first place; and (ii) had already apparently made the decision not to withdraw their assets following the initial January 9, 2025 freeze. The post had no effect.

15

**B.    Plaintiffs Fail to Plead a Strong Inference that Nine Realms Acted with Scienter.**

To plead a viable fraud claim, Plaintiffs must allege facts raising a strong inference that *each* Defendant acted with scienter. *IKB Int'l S.A.* v. *Bank of Am. Corp.,* 584 F. App'x 26, 28-29 (2d Cir. 2014). This requires alleging facts that: (1) show that each defendant had both the motive and opportunity to commit fraud; or (2) that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Gardner* v. *Sensio Inc.*, 645 F. Supp. 3d 310, 322 (S.D.N.Y. 2022).

As to *motive and opportunity*, Plaintiffs allege only that "Defendants made these misrepresentations with the intent to induce Plaintiffs and other users to deposit digital assets into THORFi's Savers and Lending programs and to generate fees and value for Defendants." SAC ¶209. That is not enough. "The mere receipt of compensation and the maintenance of a profitable professional business relationship . . . does not constitute a sufficient motive for purposes of pleading scienter." *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 620-21 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).

Further, Plaintiffs do not even attempt to allege any facts constituting "strong circumstantial evidence of conscious misbehavior or recklessness" as to Nine Realms. *Gardner*, 645 F. Supp. 3d at 322; *see supra,* at Section I. Instead, Plaintiffs merely allege that "[a]t the time these statements were made, Defendants knew them to be false or made them with reckless disregard for their truth." SAC ¶208. Courts of this district "regularly reject this exact language as insufficient to allege fraudulent intent." *Bynum*, 592 F. Supp. 3d at 316 (collecting cases).

**C.    Plaintiffs Do Not Allege that they Reasonably Relied on Any Misstatement or Omission Purportedly Made by Nine Realms.**

Further, Plaintiffs do not sufficiently allege that they relied on statements made by Nine Realms. Only one plaintiff**,** Brian Kornrumpf, allegedly reviewed *Medium* articles published by Nine Realms and alleges that he relied on Nine Realms' representations "that he would be able to

earn yield on his assets….” SAC ¶128.[28] The other Plaintiffs do not specify any statements made by Nine Realms that they reviewed, let alone relied upon. *Id.* ¶¶124-127, 129-140. The SAC is devoid of specific allegations "plaintiff[s] saw, read, or otherwise noticed" any alleged misrepresentations by Nine Realms and for that reason, fails to state a claim. *In re Fyre Festival Litig.,* 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019).

Even if this Court were to consider statements attributed to "Defendants" generally as supporting a fraud claim against Nine Realms, Plaintiffs' reliance on these alleged misstatements was not reasonable. In "assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Negrete* v. *Citibank, N.A.*, 237 F. Supp. 3d 112, 124 (S.D.N.Y. 2017), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) (citation omitted). And while reasonable reliance does not require due diligence, Plaintiffs must show minimal diligence or care that negates their own recklessness. *Banque Franco-Hellenique de Com. Int'l et Mar., S.A. v. Christophides*, 106 F.3d 22, 27 (2d Cir. 1997).

Here, the publicly-available materials cited in Plaintiffs' own SAC clearly demonstrate that Plaintiffs either (i) were aware of additional information that made their alleged reliance unreasonable; or (ii) at the very least were reckless in not reviewing additional information about the risks of participating in THORFi that was readily available to them. *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 595-97 (S.D.N.Y. 2018); *see supra,* at Section II.A.1.

At the heart of Plaintiffs' complaint, they appear to argue that *the very existence* of Admin Mimir in the THORChain protocol means that it was not decentralized. SAC ¶¶21, 22, 208, 218. But such purported reliance was not reasonable given the other information readily available to

---

[28] Notably, earning yield is a feature of Savers, not the Lending program in which he participated. *See* SAC ¶¶ 9, 109.

Plaintiffs, and cited in their own SAC. Plaintiffs acknowledge this information about Admin Mimir was publicly available. *Id.* ¶26 (noting "many public statements about use of Admin Mimir" prior to January 9, 2025). Further, articles cited within the SAC demonstrate public discourse concerning Admin Mimir and the impact it had on THORChain's decentralization. For example, the SAC cites a September 4, 2024 article published on *Medium* (SAC ¶120 n.34) that plainly states: "THORChain is anything but decentralized," and "Mimir is the admin interface . . . the mimir interface can 'pause' the blockchain…. [Admins] actually did so <u>several times</u>."[29] The article links to an article describing how THORChain "paused its network," "halted all trading," and how halts occurred in 2021 and 2022.[30] To rely on statements concerning "decentralization" to mean there was no admin key is not reasonable, given the mix of information available.

Plaintiffs similarly did not reasonably rely on other group pled allegations, which were entirely disclaimed by publicly-available information cited in Plaintiffs' own SAC materials:

- **Risks of Savers Program:** Plaintiffs who used the Savers program allege that they relied on representations that they would be able to earn yield "without RUNE price exposure" (SAC ¶96) and would be able "[w]ithdraw to native assets at any time." SAC ¶12. But THORChain's website states "Savers Vaults [are] not risk-free."[31] Savers participants were also aware that their assets were deposited into a "BTC-RUNE liquidity pool" and that "synthetic BTC (synth) is minted that tracks the user's share of BTC in the liquidity pool,"[32] meaning the asset was no longer in a user's possession and was paired with RUNE. Finally, it was publicly known that access to withdrawals had been paused before.[33]

- **Risks of Lending Program:** Plaintiffs who used the Lending program allege they relied on the representations they could "repay loans at any time, with any amount in any asset," and they would "always have the right to have their collateral returned…" SAC ¶15. But the SAC incorporates by reference a website featuring a Report outlining the fail cases of

---

[29] *See Hammering THORChain*, *supra* note 17.
[30] Helen Partz, *THORChain mainnet halted amid new vulnerability reports*, Cointelegraph, https://cointelegraph.com/news/thorchain-mainnet-halted-amid-new-vulnerability-reports (last visited Apr. 17, 2026).
[31] *Savers FAQ, supra* note 6.
[32] *Edge Rolls out THORchain Savers and Dex Aggregator*, Edge, https://edge.app/blog/company-news/edge-rolls-out-thorchain-savers-and-dex-aggregator/ (last visited Apr. 18, 2026) ("Savers are compensated for providing the liquidity that facilitates swaps in and out of the liquidity provider's asset.").
[33] *See* Pl. Dec. ¶ 22; *see also* Nine Realms, *THORChain September 2024 Hard Fork Preparation*, Medium, https://medium.com/thorchain/thorchain-september-2024-hard-fork-preparation-2ad163a2fc00 (last visited Apr. 18, 2026).

the program. *See supra,* Background. Plaintiffs' reliance on the fact that there were no circumstances where their collateral would not be returned was therefore not reasonable.

Plaintiffs' reliance on the group-pled allegations are belied by publicly available materials.[34]

### D.     Plaintiffs Cannot Allege that Nine Realms' Actions Caused Their Losses.

Plaintiffs' fraud claims also fail because they do not (and cannot) plead that there was "some reasonable connection" between Nine Realms' alleged fraudulent conduct and Plaintiffs' purported losses. *Laub v. Faessel*, 297 A.D.2d 28, 31 (1st Dep't 2002) (fraud plaintiffs must allege both transaction and loss causation). Plaintiffs allege they were damaged when they were "permanently deprived of their property" when the THORFi programs were suspended. *E.g.,* SAC ¶205. But there were several intervening events between Nine Realms' alleged misstatements and the suspension of THORFi, including (1) the "unilateral" exercise of the Admin Mimir key by Thorbjornsen on January 9, 2025 (SAC ¶26); (2) the Nodes' decision to override Thorbjornsen's actions that day (*id.*); (3) Plaintiffs' decision not to withdraw their assets during the intervening two weeks; (4) the Nodes' decision to halt withdrawals again on January 24, 2025 (Pl. Dec. ¶35); (5) the public deliberation of the THORChain community concerning a path forward (*id.* at ¶38); and (6) the Nodes' adoption of Proposal 6 on February 3, 2025, which ended THORFi. SAC ¶180; *see generally* Barraford Br. Plaintiffs do not plausibly allege that anything Nine Realms did or said, rather than "intervening events," caused their losses. *Basis PAC-Rim Opportunity Fund (Master)* v. *TCW Asset Mgmt. Co.*, 149 A.D.3d 146, 149 (1st Dep't 2017) (citation omitted).

---

[34] Plaintiffs argue representation that users were "insulated from RUNE price exposure and that RUNE was deflationary was materially false and misleading" because THORFi was dependent on RUNE. SAC ¶218. This is flawed for many reasons, *inter alia*, 1) there is no statement that Lenders were insulated from RUNE price exposure; 2) if Plaintiffs relied on a representation that RUNE's price could never go down, reliance was plainly not reasonable as public sources show RUNE's price volatility (*THORChain Rune*, CoinMarketCap, https://coinmarketcap.com/currencies/thorchain/ (last visited Apr. 18, 2026)); and 3) it is not reasonable to rely on a representation that the price of the *native asset* of a protocol (RUNE) will not affect the protocol (THORChain).

19

### III.    THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR NEGLIGENT MISREPRESENTATION (COUNT III)

To state a claim for negligent misrepresentation under New York law, Plaintiffs must plead defendant "[(1)] had a duty, as the result of a special relationship, to give correct information; (2) … made a false representation that he or she should have known was incorrect; (3) the information supplied … was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 515–16 (S.D.N.Y. 2018) (quoting *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 21 (2d Cir. 2000)).

Here, Plaintiffs fail to allege a special relationship between themselves and Nine Realms. "Participating in a business transaction does not, by itself, give rise to a special relationship for purposes of negligent misrepresentation." *Id.* at 516 (citations omitted). "Rather, the relationship must be 'privity-like,' fiduciary, or one in which a party either has 'unique or specialized expertise' or is 'in a position of confidence and trust with the injured party." *Id.* (citations omitted). Nowhere in the SAC do Plaintiffs allege that Nine Realms had any such relationship with Plaintiffs. Accordingly, the claim fails on the first element.

Plaintiffs' claim also fails on the remaining elements. Plaintiffs do not adequately allege that Nine Realms "made a false representation that [it] should have known was incorrect" as demonstrated in Section II.A.1, *supra*; nor do they adequately plead that they intended to rely and act upon the "misrepresentation[s]" or that they reasonably relied on them, as demonstrated in Section II.C, *supra*.

Finally, Plaintiffs also do not allege that "the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose." *Tears,* 344 F.

20

Supp. 3d at 515. And Plaintiffs cannot. Nine Realms did not know anything about Plaintiffs' desired information needs or the seriousness of their purpose.

## IV.   THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR VIOLATIONS OF GBL §§ 349 or 350 (COUNT V)

To state a claim under §349 or §350, "plaintiff must allege [i] that the defendant … engaged in consumer-oriented conduct; [ii] that the conduct was materially misleading; and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted). A "transaction in which the consumer is deceived must occur in New York," and the consumer must be a citizen of, or have completed their purchase in, New York. *Eng.* v. *Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529, 536 (S.D.N.Y. 2023) (citation omitted). Plaintiffs' claim fails for three reasons.

*First*, the SAC contains no allegations that the "transaction in which the consumer is deceived…occur[ed] in New York," or that any of the Plaintiffs are either citizens of, or completed their purchase in, New York. *Eng.*, 678 F. Supp. 3d at 536. Courts, routinely dismiss GBL § 349 claims where the location of the transaction is not in New York. *See e.g., Miramontes v. Ralph Lauren Corp.*, 2023 U.S. Dist. LEXIS 78991, at *12 (S.D.N.Y. May 5, 2023) (dismissing GBL § 349 claim even though defendant was located in New York, because plaintiff was a "Texan who saw the label and purchased the sweater in Texas").

Plaintiffs do not claim that their participation took place in New York, and are not residents of New York. SAC ¶¶36-50. Plaintiffs allege that Nine Realms is organized in Delaware, with its principal place of business in Arizona. *Id.* ¶60. Plaintiffs merely allege that *THORChain* maintains a "continuous and interactive online presence" in New York (SAC ¶65) and that "[u]pon information and belief" Defendants, including unidentified Nine Realms' "key [] developers," met in New York (*id.* at ¶55); and that unidentified Nine Realms' "key developers" reside in New York

21

and operate THORChain in New York (*id.* at ¶60). This is insufficient to establish a New York nexus. *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110-12 (E.D.N.Y. 2020) (dismissing GBL § 349 claim even though plaintiffs received advertisements and processed a transaction in New York, and had an agreement with a New York choice of law clause).

*Second*, the SAC does not allege that Nine Realms made any false or misleading statements or omissions, which, for the reasons in Section II.A.1, *supra*, is fatal to Plaintiffs' GBL claims. *See, e.g.*, *Celestin v. Martelly*, 698 F. Supp. 3d 443, 470–71 (E.D.N.Y. 2023).

*Third*, the SAC does not allege that Nine Realms' conduct caused Plaintiffs' injury which, for the reasons in Section II.D, *supra*, means Plaintiffs' GBL claims fail for this independent reason. *See, e.g.*, *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557–58 (S.D.N.Y. 2014).

## V.  THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR CONVERSION (COUNT I)

"To maintain a claim for conversion, a plaintiff must show: (1) the property subject to conversion is 'a specific identifiable thing;' (2) plaintiff had 'ownership, possession or control' over the property before its conversion; and (3) defendant 'exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 543 (S.D.N.Y. 2009). Further, where a conversion claim is based upon alleged fraudulent conduct, it must be pled with sufficient particularity. *See e.g., Daly*, 30 F. Supp. 2d at 414 (applying Rule 9(b) to conversion claim).

Primarily, the SAC does not allege that Nine Realms ever exercised unauthorized dominion or control over the funds that Plaintiffs deposited into THORFi. To the contrary, the allegations in the SAC instead support the position that the Nodes control the funds in the protocol at all times.[35]

---

[35] Nodes voted to 1) override Thorbjornsen's unilateral pause (SAC ¶26); 2) freeze withdrawals (*id.* ¶27 ); 3) adopt Proposal 6 (*id.* ¶180); and 4) remove Admin Mimir from the protocol, giving Nodes "full control" (Pl. Dec. ¶43).

*See supra*, Background. Here, the SAC merely states that Nine Realms held "authority" (SAC ¶88) over THORChain's software deployment, website, and social media (as service providers would), but provides no particularized allegations regarding any point at which Nine Realms had *control* over their property. That Nine Realms had "authority" is a legal conclusion and should not be credited absent any underlying factual support. *See Manning v. City of New York*, No. 23 CIV. 2352 (LGS), 2024 WL 3480437, at *4 (S.D.N.Y. July 19, 2024). Further, allegations as to the ability of Nine Realms (and Defendants) to control Plaintiffs' funds are made on information and belief.[36] Such allegations are not to be credited. *See Knapp v. Maron*, No. 14-CV-10121 (NSR), 2016 WL 2851563, at *2 (S.D.N.Y. May 12, 2016) (finding speculative allegations on information and belief conclusory and inadequate). Allegations are only drawn in favor of the plaintiff insofar as they are not conclusory. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Further, Plaintiffs fail to adequately allege that they demanded their funds from Nine Realms, a required element where the initial possession of chattel was authorized, as here. *See Reca v. Flashdot Ltd.*, No. 1:24-CV-6316-GHW, 2026 WL 82702, at *13 (S.D.N.Y. Jan. 12, 2026). Plaintiffs have attempted to remedy this pleading deficiency through the SAC by alleging that "[o]n June 10, 2025, Plaintiffs' counsel sent a letter to . . . Nine Realms demanding that Defendants return Plaintiffs' assets." SAC ¶191. Notwithstanding the fact that Nine Realms *has no record of any demand*, Plaintiffs' scant allegation fails to plead facts sufficient to demonstrate that demand was, in fact, made to Nine Realms on behalf of *each* Plaintiff claiming conversion. *Daly*, 30 F. Supp. 2d at 414. Plaintiffs cannot maintain a conversion claim against Nine Realms.

---

[36] The following allegations are on information and belief: 1) "the validator set…was [and is] controlled by a small group of insiders controlled by or aligned with Defendants" (SAC ¶27); 2) Defendants have the ability "to return Plaintiffs' assets" (*id.* ¶29); and 3) THORChain's membership is affiliated with Defendants, who "controlled [its] operations and public communications." *Id.* ¶66.

**VI.    THE SAC FAILS TO STATE A CLAIM AGAINST NINE REALMS FOR UNJUST ENRICHMENT (COUNT IV)**

To plead unjust enrichment under New York law, Plaintiffs must allege "(1) defendant was enriched; (2) at plaintiff's expense; and (3) equity and good conscience militate against permitt[ing] defendant to retain what plaintiff is seeking to recover." *In re Merrill, Bofa, & Morgan Stanley Spoofing Litig.*, No. 19-CV-6002 (LJL), 2021 WL 827190, at *13 (S.D.N.Y. Mar. 4, 2021). Here, Plaintiffs' claims for unjust enrichment (Count IV) cannot succeed for multiple reasons.

*First*, as discussed in Section I, *supra,* Plaintiffs do not allege that Nine Realms engaged in any misconduct relating to THORChain or THORFi. Plaintiffs' conclusory allegations and group pleading are not a sufficient substitute for pleading statements or conduct specifically attributable to Nine Realms. *See Snowbridge Advisors LLC* v. *ESO Cap. Partners UK LLP*, 589 F.Supp.3d 401, 421-22 (S.D.N.Y. 2022) (unjust enrichment claim failed when plaintiff did not allege "affirmative acts" by individual defendants that resulted in a benefit at plaintiffs' expense).

*Second*, Plaintiffs fail to allege a sufficient "connection between the parties that [is] not too attenuated." *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321 (JGK), 2023 WL 2051739, at *11 (S.D.N.Y. 2023) (internal quotation marks and citation omitted). If the "parties were not connected in a manner that could have caused reliance or inducement," the claim fails. *Id*. There are no allegations of direct dealing or relationship between individual Plaintiffs and Nine Realms.

*Third,* Plaintiffs do not allege their participation in THORFi "enriched" or conveyed a benefit *directly* to Nine Realms or that they had a special relationship or connection. *See Edmar Fin. Co., LLC v. Currenex, Inc.*, No. 21-CV-6598 (LAK), 2023 WL 3570017, at *20 (S.D.N.Y. May 18, 2023) ("[C]ourts require proof that the defendant received a 'specific and direct benefit' from the property sought to be recovered" and plaintiffs must "allege some kind of relationship or connection to [the] defendant") (citations omitted). It is not enough to allege that Nine Realms

24

generally received node operation fees and payments from the Developer Fund from THORChain. SAC ¶197. Courts routinely reject claims premised on compensation as too "attenuated" to state a claim. *See e.g.*, *Bilinski* v. *Keith Haring Found., Inc.*, 96 F.Supp.3d 35, 52 (S.D.N.Y. 2015).

*Fourth*, Plaintiffs' unjust enrichment claims should be dismissed because "courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims." *Velez* v. *Lasko Prods., LLC*, 706 F. Supp. 3d 444, 463 (S.D.N.Y. 2023) (citation omitted).

## VII.   PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES.

Finally, Plaintiffs' demand for punitive damages on their conversion and fraud claims (Counts I and II, respectively) must be dismissed because the SAC does not come close to pleading the extraordinary circumstances required under New York law. Plaintiffs do not plead Defendants "acted with malice or reckless disregard of plaintiffs' rights," as required to support punitive damages for conversion. *Elma RT v. Landesmann Int'l Mktg. Corp.*, No. 98 CIV. 3662 LMM, 2000 WL 297197, at *4 n. 1 (S.D.N.Y. Mar. 22, 2000). Instead, Plaintiffs rely on a single conclusory allegation that they are entitled to punitive damages (SAC ¶205), which is insufficient. Further, punitive damages are unavailable in the ordinary fraud case, but instead must involve a "high degree of moral turpitude" and "wanton dishonesty as to imply a criminal indifference to civil obligations." *Town of Haverstraw v. Columbia Elec. Corp.*, 237 F. Supp. 2d 452, 457 (S.D.N.Y. 2002) (citation omitted). Plaintiffs do not, and cannot, meet this standard. *See supra* at Sections I and II.

### CONCLUSION

Nine Realms respectfully requests that the Court dismiss the SAC with prejudice.

Date:   April 20, 2026                     Respectfully submitted,
      New York, New York

                                                 **GOODWIN PROCTER LLP**

By:     */s/ Meghan K. Spillane*
        Meghan K. Spillane
        Catherine A. Tremble
        The New York Times Building
        620 Eighth Avenue
        New York, New York 10018
        Telephone: (212) 813-8800
        mspillane@goodwinlaw.com
        ctremble@goodwinlaw.com

        *Attorneys for Nine Realms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2026, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system on all counsel registered to receive electronic notices.

/s/ *Meghan K. Spillane*
Meghan K. Spillane