**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMIE SHILLER, BRIAN KORNRUMPF, HALSEY RICHARTZ, AMNON MELZER, RYAN TREAT, GEOFF FRINK, JEREMY GRAINGER, RANDY CORAN, BRIAN DUBS, GUY ZILBER, CURTIS HALE, DIRK WEILER-THELEMANN, DARRELL SMITH, CHAD MIELKE, and ROBERT CHRISTIANSEN,<br><br>Plaintiffs,<br><br>v.<br><br>CHAD BARRAFORD, JOHN-PAUL THORBJORNSEN, and NINE REALMS, INC.,<br><br>Defendants. | C.A. NO. 1:25-CV-10287-MKV |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AUTHORIZATION TO SERVE DEFENDANT JOHN-PAUL THORBJORNSEN BY ALTERNATIVE MEANS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

I. Defendants' Misrepresentations About THORChain Give Rise to Plaintiffs' Claims .......... 2

II. Plaintiffs Repeatedly Attempt to Serve Thorbjornsen Over the Course of Three Months. .......... 4

LEGAL STANDARD .......... 8

ARGUMENT .......... 10

I. THIS COURT HAS DISCRETION TO AUTHORIZE ALTERNATIVE METHODS OF SERVICE PURSUANT TO FRCP 4(f)(3) .......... 10

A. Plaintiffs' Numerous Prior Service Attempts Have Failed. .......... 10

B. Court Intervention is Necessary to Serve Thorbjornsen. .......... 12

II. ALTERNATIVE SERVICE BY CERTIFIED MAIL, EMAIL, AND SOCIAL MEDIA IS PROPER UNDER FRCP 4(f)(3) .......... 14

A. Australia Does Not Oppose Service by Certified Mail, Email, and Social Media. .......... 14

B. Service by Certified Mail, Email, and Social Media Comports with Due Process. .......... 15

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackermann v. Levine*,
788 F.2d 830 (2d Cir. 1986)....................15

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
240 F.R.D. 608 (S.D.N.Y. 2007)....................10

*AMTO, LLC v. Bedford Asset Mgmt., LLC*,
No. 14-CV-9913, 2015 WL 3457452 (S.D.N.Y. June 1, 2015)....................9

*Arista Recs. LLC v. Media Servs. LLC*,
No. 06 CIV. 15319NRB, 2008 WL 563470 (S.D.N.Y. Feb. 25, 2008)....................13

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
No. 20CV2807(DLC), 2020 WL 4586819 (S.D.N.Y. Aug. 10, 2020)....................17

*In re BRF S.A. Sec. Litig.*,
No. 18-CV-2213 (PKC), 2019 WL 257971 (S.D.N.Y. Jan. 18, 2019)....................15

*Doe v. Hyassat*,
342 F.R.D. 53....................11, 16

*F.T.C. v. PCCare247 Inc.*,
No. 12 CIV. 7189 PAE, 2013 WL 841037 (S.D.N.Y. Mar. 7, 2013)....................14, 17

*In re GLG Life Tech Corp. Secs. Litig.*,
287 F.R.D. 262 (S.D.N.Y. 2012)....................9, 11, 13

*Prediction CO. LLC v. Rajgarhia*,
No. 09-7459, 2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010)....................9

*ShelterZoom Corp. v. Goroshevsky*,
No. 19-CV-10162 (AJN), 2020 WL 4252722 (S.D.N.Y. July 23, 2020)....................16

*Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*,
164 F.4th 164 (2d Cir. 2025)....................11

*Stream SICAV v. Wang*,
989 F. Supp. 2d 264 (S.D.N.Y. 2013)....................11, 12

*In re Terrorist Attacks on Sept. 11, 2001*,
No. 03-MD-01570 (GBD)(SN), 2023 WL 2966563 (S.D.N.Y. Apr. 17, 2023)....................17

*United States v. Besneli*,
2015 WL 4755533 (S.D.N.Y. Aug. 12, 2015) ........ 11, 16

*United States v. Lebanese Canadian Bank SAL*,
285 F.R.D. 262 (S.D.N.Y. 2012) ........ 9

*XYZ Corp v. Individuals, Partnerships & Unincorporated Associations Identified in Schedule A*,
No. 24 CIV. 1962 (LGS), 2024 WL 1579910 (S.D.N.Y. Apr. 11, 2024) ........ 15

*Zanghi v. Ritella*,
2020 WL 589409 (S.D.N.Y. Feb. 5, 2020) ........ 9, 14, 15

**Statutes**

N.Y. GEN. BUS. LAW §§ 349–350 ........ 4

**Other Authorities**

Federal Rules of Civil Procedure Rule 4(f)(3) ........ *passim*

FRCP 4(f) ........ 8, 9, 11

FRCP 4(f)(1) ........ 10, 11, 12

FRCP 4(f)(2) ........ 11

FRCP 4(f)(3): (1) ........ 18

Priv. Int'l L., *Status Table: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Mar. 22, 2026) ........ 1

Rule 4(f)(1) and Article 10(b) ........ 12

Rule 4(f)(3)' ........ 9

Plaintiffs, by and through undersigned counsel, respectfully submit this memorandum of law in support of their motion for leave to seek alternative means of service pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure (the "FRCP") (the "Motion") on defendant John-Paul Thorbjornsen ("Thorbjornsen"), an Australian citizen, and the Declaration of Benjamin F. Cooper in Support of Plaintiffs' Motion.[1] In further support of the Motion, Plaintiffs respectfully represent as follows.

## PRELIMINARY STATEMENT

Alternative service on Thorbjornsen via certified mail, e-mail, and social media is warranted under FRCP 4(f)(3) in light of Plaintiffs' diligent, costly, and repeated efforts to personally serve Thorbjornsen in Australia, both at his personal residences and the airport in and out of which he is known publicly to travel. Over the past several months, Plaintiffs have engaged multiple process servers to attempt personal service at three of Thorbjornsen's residences in Melbourne and Darwin and, when those attempts failed, retained a surveillance team to monitor Thorbjornsen, his Melbourne residence, and his flights in and out of Melbourne Airport and Moorabbin Airport in a further effort to attempt service. All told, Plaintiffs made no less than nine attempts to personally serve Thorbjornsen at these locations. However, each attempt proved unsuccessful and resulted in significant delay to the prosecution of this litigation and expense to Plaintiffs.

Plaintiffs are not required to attempt service on Thorbjornsen in Australia under the Central Authority for the Hague Convention for the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention")[2], and any such attempt

---

[1] "Cooper Aff." And "Ex." refer to the Declaration of Benjamin F. Cooper and accompanying exhibits, respectfully, submitted herewith.

[2] Australia is a signatory to the Hague Convention. *See* Hague Conf. on Priv. Int'l L., *Status Table: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*,

would further delay this litigation and force Plaintiffs to incur unnecessary and substantial costs. Indeed, alternative service under FRCP 4(f)(3) is not a "last resort" and can be sought before exhausting Hague Convention service.

Accordingly, Plaintiffs respectfully requests that this Court authorize alternative means of service: (1) by certified mail to Thorbjornsen's known residential addresses (390 Edward Roard, Chirnside Park VIC 3116; 104 Cullen Bay Crecent, Larrakeyah NT; and 97 Cullen Bay Crecent, Larrakeyah NT 08290); (2) by email to Thorbjornsen's known email address (jpthor@protonmail.com); and (3) by direct message through Thorbjornsen's verified X (formerly Twitter) account (@jpthor). Each proposed method is well supported by federal courts, fully consistent with applicable international obligations, and reasonably calculated to provide Thorbjornsen with actual notice of this litigation.

## STATEMENT OF FACTS

### I. Defendants' Misrepresentations About THORChain Give Rise to Plaintiffs' Claims

THORChain, a cryptocurrency platform that allows users to move and invest digital currencies across different networks, was co-founded by Defendants Chad Barraford ("Barraford") and Thorbjornsen, a citizen of Australia who conducts business in the United States. (Second Amended Complaint ("SAC") ¶¶ 8, 56, 86, ECF No. 49). THORChain is also operated by Defendant Nine Realms Inc. ("Nine Realms"), a cryptocurrency company responsible for the core development of THORChain's infrastructure. (*Id.* ¶ 88). Together, Defendants Thorbjornsen, Barraford, and Nine Realms acted as THORChain's core developers and held authority over and operated THORChain's website, social media, and other public platforms. In late 2022 and early 2023, Defendants launched THORChain's Savers and Lending Program ("THORFi"). (*Id.* ¶ 8).

https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Mar. 22, 2026).

On their website and through Defendants' own social media channels, Defendants publicly advertised THORFi as a "permissionless, open-source, decentralized, self-custody solution," where users would be able to "withdraw their principal any time," "maintain full control of their keys," and "always have the right to have their returned collateral if they repay the loan." (*Id.* ¶¶ 13, 15, 106, 110-112, 114, 119, 158). In reliance on Defendants' numerous representations that THORFi was a decentralized platform, Plaintiffs deposited approximately $11.1 million in digital assets into THORFi.

However, these representations were false and THORFi was never truly decentralized. Thorbjornsen, Barraford, and Nine Realms each retained centralized control over assets deposited into THORFi through a concealed administrative override known as the "Admin Mimir" key that allowed them to unilaterally disable withdrawals and freeze THORFi users' assets without their consent. (*Id.* ¶¶ 21, 120). On January 9, 2025, as THORFi was experiencing a full-blown liquidity crisis and teetering on collapse, Thorbjornsen activated this key and unilaterally froze Plaintiffs' assets in THORFi. (*Id.* ¶¶ 25-27, 150, 152). And on January 24, 2025, THORChain node operators voted to suspend THORFi indefinitely, permanently preventing Plaintiffs from opening new loans, repaying existing loans, and withdrawing cryptocurrency from their wallets. (*Id.* ¶ 27, 155, 161, 163). Although protocol modifications required 67% node approval, on information and belief, the validator set (*i.e.*, the group of computers approved to verify and process transactions on the network) was—and remains—controlled by a small group of insiders controlled or aligned with Defendants. (*Id.* ¶ 27).

Plaintiffs filed a complaint on December 11, 2025. The Court issued summonses on Defendants Barraford and Thorbjornsen on December 12, 2025. (ECF Nos. 21, 22). Plaintiffs

attempted service on Barraford in December 2025 and stipulated with his counsel to service on January 12, 2026, which was entered by the Court on January 13, 2026 (ECF No. 30).

Pursuant to a stipulation with Nine Realms, Plaintiffs filed an Amended Complaint on January 19, 2026 to streamline the cases filed in two different jurisdictions and add Nine Realms as a defendant in the New York action. (ECF Nos. 40, 49). Plaintiffs served Nine Realms on January 27, 2027. (ECF Nos. 31, 40). Plaintiffs then filed a Second Amended Complaint on April 6, 2026 for claims of conversion, common law fraud, negligent misrepresentation, unjust enrichment, and unfair and deceptive business practices under N.Y. GEN. BUS. LAW §§ 349–350. (ECF No. 49).

On March 6, 2026, Barraford and Nine Realms each requested permission to file motions to dismiss (ECF Nos. 41, 42) and both requests were granted. (ECF No. 47). This litigation is progressing quickly, and yet Plaintiffs have been unable to serve Thorbjornsen despite their diligent efforts.

## II. Plaintiffs Repeatedly Attempt to Serve Thorbjornsen Over the Course of Three Months.

Plaintiffs have repeatedly attempted to personally serve Thorbjornsen in Australia where he is located but have been unsuccessful. Plaintiffs expended substantial time, effort, and resources by deploying traditional process servers and a consulting firm's surveillance team in Australia to conduct thorough due diligence on Thorbjornsen through a detailed investigation into his property, helicopter ownership, and movements throughout Australia.

First, Plaintiffs attempted traditional personal service on Thorbjornsen. Plaintiffs identified three properties in Melbourne and Darwin, Australia through public records searches that they believed with a high degree of confidence were owned and resided in by Thorbjornsen: (1) 390 Edward Roard, Chirnside Park VIC 3116 ("Property 1"); (2) 104 Cullen Bay Crecent, Larrakeyah

NT ("Property 2"); and (3) 97 Cullen Bay Crecent, Larrakeyah NT 08290 ("Property 3"). Plaintiffs then made multiple traditional service attempts at each of these properties using process servers on January 7, January 8, January 9, and January 12, 2026. After these efforts were unsuccessful, Plaintiffs pivoted their strategy to tracking Thorbjornsen's flight patterns and monitoring Property 1, where Plaintiffs reasonably believed Thorbjornsen was currently residing based on their investigation.

Plaintiffs' efforts to confirm that Thorbjornsen was currently residing at Property 1 through a sustained, multi-pronged investigation included: (i) analyzing data gathered from surveillance of Thorbjornsen's helicopter activity; (ii) identifying satellite imagery showing Thorbjornsen's helicopter parked at Property 1; (iii) obtaining confirmation from Property 1's realtor that it had been purchased in June 2025; and (iv) reviewing Property 1's registry records to determine that the registered proprietor was a company for which Thorbjornsen served as director and secretary, before subsequently removing himself. (Cooper Decl. ¶ 4). After confirming, based on their diligent investigation, that there was a reasonable belief that Thorbjornsen was currently residing at Property 1, Plaintiffs retained process server Natasha Burke to attempt service on Thorbjornsen at this location. (*See* Ex. 2 (Affidavit of Attempted Service by Natasha Burke, dated January 20, 2026)). Ms. Burke attempted service on three different dates.

On January 7, 2026, Burke visited Property 1 and noted that it was enclosed by a tall brick wall and gated entrance, with the house situated at the end of a long driveway. Burke attempted to speak to Thorbjornsen over the gate's intercom but was unable to obtain an answer. The next day, on January 8, 2026, Burke returned to Property 1 and spoke to a woman over the intercom. Despite the surveillance team's confirmation that the property belonged to Thorbjornsen and satellite imagery confirming that his aircraft had been parked there, the woman stated that Thorbjornsen

did not live at the property. On January 12, 2026, Burke arrived once again to reattempt service on Thorbjornsen, and, after surveying the property and interviewing the neighbors, was unable to receive an answer on Thorbjornsen's whereabouts. (*Id.*).

Plaintiffs also invested substantial resources and expenses into locating and attempting service at Property 2 and Property 3 in Darwin. Plaintiffs located Properties 2 and 3 by identifying and analyzing Thorbjornsen's various corporate filings where these addresses were listed. Plaintiffs then retained process server, Grant Jonsson, who attempted service on January 9, 2026 at Property 2. However, this service attempt was unsuccessful after Jonsson spoke with the occupant, Paul Renshaw, who stated Thorbjornsen was not known and that Renshaw had rented the property eleven months prior through the Chin Property Group. (*See* Ex. 3 (Affidavit of Attempted Service by Grant Jonsson, dated January 27, 2026). The same day, Jonsson attempted service at Property 3, but was again unsuccessful. (*Id.*).

Jonsson then contacted Seth Chin at Chin Property Group who advised that he manages properties for Thorbjornsen and that Thorbjornsen was currently in Melbourne. (*Id.*). Chin also informed Jonsson that Property 3 had recently been sold by Thorbjornsen, which was unknown to Plaintiffs at the time service was attempted at the property. (*Id.*). Chin stated that he would pass Jonsson's details to Thorbjornsen, requesting he contact Jonsson as a matter of urgency, but to date, neither Jonsson nor Plaintiffs have received any contact from Thorbjornsen. (*Id.*).

After these numerous attempts at traditional service were unsuccessful, Plaintiffs then began focusing their efforts on monitoring Thorbjornsen's movements throughout Australia to find an opportunity to serve him while in transit. Plaintiffs retained a surveillance team that identified an aircraft owned by Thorbjornsen and used satellite imagery to track Thorbjornsen's flight activity throughout Australia. (*See* Ex. 4 (Surveillance Team's Operational Reports and Compiled

Information on Thorbjornsen)). Using this information, the team looked for opportunities to intercept Thorbjornsen either at his home, the airport, or other public locations.

Specifically, on January 11, 2026, the surveillance team monitored his flight movements in Melbourne between Moorabbin Airport, the Lilydale/Coldstream area, and Essendon Airport. (*See* Ex. 4 (Surveillance Team's Operational Reports and Compiled Information on Thorbjornsen)). Using the flight data they had already collected and analyzed, the team detected a specific flight pattern that appeared to be consistent over the course of a two-month period. However, shortly after Plaintiffs served Barraford with the Complaint in the U.S., Thorbjornsen altered his flight patterns, making monitoring, predicting flight patterns, and attempting service even more challenging. (*Id.*). The team attempted to predict Thorbjornsen's movements using this flight pattern, but efforts to intercept Thorbjornsen were ultimately unsuccessful.

On January 25, 2026, the team conducted surveillance on Property 1 to again attempt service. (*Id.*). Surveillance operations on the property continued for ten hours, but the surveillance report revealed no activity, and Thorbjornsen appeared to not be present. On January 26, 2026, the team monitored Property 1 for another ten hours but again detected no activity. (*Id.*).

On January 28, 2026, the team recommenced surveillance on Property 1, but the property once again revealed no activity. (*Id.*) However, four hours into the surveillance, flight radar data indicated activity from one of Thorbjornsen's aircrafts. The team's operative left the residence and headed to Moorabbin Airport, where Thorbjornsen was predicted to land. The team's operative arrived at the airport within forty-five minutes and established a designated observation post to maintain direct surveillance of the premises. (*Id.*) The flight data indicated that Thorbjornsen's aircraft was currently airborne. However, about two hours later, the operative departed the airport after receiving intelligence indicating that Thorbjornsen's aircraft was detected and stationary at a

property in Narbethong (the "Narbethong Farm"). (*Id.*) When the operative arrived at the Narbethong Farm, flight radar data identified that the aircraft had departed from the property approximately 15 minutes prior and had landed at Melbourne Airport. The operative then departed the Narbethong Farm and proceeded back to Property 1 where surveillance of the property continued. However, with no further activity or departures seen, surveillance ceased after eleven hours. (*Id.*)

Another service attempt commenced on January 31, 2026, at Moorabbin Airport, where an observation post was established to provide direct oversight of the premises. Ongoing flight data of Thorbjornsen's aircraft was monitored, but there was no activity detected and, after seven hours of observation, the surveillance ceased. (*Id.*)

With surveillance costs mounting and reason to believe that Thorbjornsen was actively evading service, Plaintiffs' counsel contacted Thorbjornsen on March 4, 2026, and again on March 10, 2026, using an email address confirmed to belong to him to inquire whether he would agree to accept electronic service of the Summons and Amended Complaint. (*See* Ex. 5 (emails dated March 4, 2026, and March 10, 2026, from Benjamin Cooper to Thorbjornsen attaching the Summons and Amended Complaint)). As of the filing of this Motion, Thorbjornsen has not responded.

In light of these circumstances, continued attempts to serve Thorbjornsen through a process server in Australia appear unlikely to succeed and would result in unnecessary expenditure of time and resources. Accordingly, Plaintiffs respectfully seek authorization to effect service by alternative means.

## LEGAL STANDARD

Service of process on an individual in a foreign country is governed by FRCP 4(f). Under FRCP 4(f), there are three ways to effect service on an individual in a foreign country. Plaintiffs

seek authorization to effect service under FRCP 4(f)(3), which permits a court to authorize alternative service on a foreign defendant by means not prohibited by international agreement. The decision to permit such alternative service lies within the sound discretion of the district court. *See United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012). In exercising that discretion, courts in this District generally consider whether (1) the plaintiff has reasonably attempted to effect service, and (2) the circumstances are such that the court's intervention is necessary. *See Lebanese Canadian Bank SAL*, 285 F.R.D. at 267 (holding that the government's repeated attempts to serve a defendant abroad were reasonable and "the Court's intervention is, clearly, necessary").

However, this District has also made clear that the inquiry into whether a plaintiff reasonably attempted to effect service does not require attempting service specifically under the Hague Convention before seeking relief under Rule 4(f)(3). *See In re GLG Life Tech Corp. Secs. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)"); *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913, 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015) ("Accordingly, 'under Rule 4(f)(3), a plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)'"); *Prediction CO. LLC v. Rajgarhia*, No. 09-7459, 2010 WL 1050307, at *1 (S.D.N.Y. Mar. 22, 2010) (the "only limitations on Rule 4(f)(3) are that the means of service must be approved by the court and must not be prohibited by international agreement"). Accordingly, "[a]n alternative method of service under Rule 4(f)(3) is acceptable if it (1) is not prohibited by

international agreement; and (2) comports with constitutional notions of due process." *Zanghi v. Ritella*, 2020 WL 589409, at *6 (S.D.N.Y. Feb. 5, 2020) (internal quotation marks omitted).

## ARGUMENT

### I. THIS COURT HAS DISCRETION TO AUTHORIZE ALTERNATIVE METHODS OF SERVICE PURSUANT TO FRCP 4(f)(3)

Plaintiffs have made more than reasonable efforts to effect service on Thorbjornsen, including hiring a surveillance team to monitor his movements, sending numerous process servers to his residence, and requesting that he agree to electronic service by email. Each attempt to effect personal service was unsuccessful, and given the substantial delays in attempting service of Thorbjornsen—who appears to be evading service—the fact that Defendants Barraford and Nine Realms have already been served, and the unnecessary delay that would result from proceeding through the Hague Convention, the circumstances are such that the court's intervention is necessary. Thus, this Court should authorize alternative methods of service pursuant to FRCP 4(f)(3).

#### A. Plaintiffs' Numerous Prior Service Attempts Have Failed.

FRCP 4(f)(1) provides that an individual may be served outside of the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Service through a local process server in a foreign country is consistent with the Hague Convention. Specifically, Articles 10(b) and 10(c) provide that, where the destination state does not object, the Hague Convention does not interfere with the freedom to effect service through "other competent persons" in that country, which includes private process servers authorized under local law. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 240 F.R.D. 608 (S.D.N.Y. 2007). Accordingly, where permitted by the destination state, service through a process server constitutes an

internationally agreed means of service under the Hague Convention. Because Australia is a signatory to the Hague Convention and has not objected to Article 10(b), these principles apply to service effected in Australia.

The FRCP do not require that any other method of service be exhausted prior to seeking authorization of alternative means of service, although courts may consider prior efforts to effect service. *See United States v. Besneli*, 2015 WL 4755533, at *1 (S.D.N.Y. Aug. 12, 2015) ("Exhaustion of the other provisions of Rule 4(f) is not required before a plaintiff seeks court-ordered service."); *see also In re GLG Life Tech Corp. Secs. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012). This is because "there is no hierarchy among the subsections in Rule 4(f)." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013). Service under FRCP 4(f)(3) "is merely one means among several which enables service of process on an international defendant." *Besneli*, 2015 WL 4755533, at *1. In other words, service under FRCP 4(f)(3) is "neither a last resort nor extraordinary relief." *Id*.

That said, though the FRCP did not require them to do so, Plaintiffs undertook significant costs and incurred delay to attempt personal service pursuant to FRCP 4(f)(1), but those efforts were unsuccessful.[3] As discussed above, Plaintiffs first compiled and analyzed numerous public records to identify properties they reasonably believed Thorbjornsen owned and resided in. (Cooper Decl. ¶ 4; Ex. 4). Plaintiffs then engaged multiple process servers who attempted service at these properties nine times on January 7, January 8, January 9 (two separate attempts), January 12, January 25, January 26, January 28, and January 31, 2026. Each of these attempts was

[3] Plaintiffs need not attempt service under FRCP 4(f)(2) because Australia is a party to the Hague Convention, and therefore, service is governed by "internationally agreed means." *See Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 172 (2d Cir. 2025) (rejecting alternative means of service under Rule 4(f)(2) because the receiving country was a party to the Hague Convention and "the Rule applies only 'if there is no internationally agreed means, or if an international agreement allows but does not specify other means'.").

unsuccessful. (*See* Ex. 2; Ex. 3; Ex. 4); *see also Doe v. Hyassat,* 342 F.R.D. 53, 56 (granting plaintiff's motion for alternative service after multiple unsuccessful service attempts using a process server). Plaintiffs then redirected their efforts to monitoring Thorbjornsen's flight patterns and residential properties in Melbourne throughout January, incurring significant costs, to refine their service efforts but became reasonably certain that Thorbjornsen was intentionally avoiding service. (Cooper Decl. ¶ 7).

Counsel thereafter contacted Thorbjornsen at his verified personal email address on March 4 and March 10, 2026, to request consent to electronic service of the Summons and Amended Complaint, but Thorbjornsen has not responded as of the filing of this motion. (*See* Ex. 5).

These diligent, costly, and extensive efforts to serve Thorbjornsen under FRCP 4(f)(1)—efforts that the Federal Rules do not even require Plaintiffs to undertake before seeking alternative means of service—justify the authorization to serve Thorbjornsen through alternative means under FRCP 4(f)(3).

**B. Court Intervention is Necessary to Serve Thorbjornsen.**

Avoiding the delay and expense associated with the Hague Convention's Central Authority process provides a valid basis for granting such relief, particularly where, as here, service through the Hague Convention would "needlessly delay the resolution of this case for many months." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 280 (S.D.N.Y. 2013). As set forth above, Plaintiffs have diligently pursued service for several months through methods consistent with Rule 4(f)(1) and Article 10(b) of the Hague Convention by retaining an Australian process server and attempting personal service nine times at multiple addresses associated with Defendant.

These proceedings have already been significantly delayed by challenges associated with serving Thorbjornsen in Australia. Such delay is especially unnecessary because Thorbjornsen likely already has actual notice of this action and can easily be served by alternative means. *See*

*Arista Recs. LLC v. Media Servs. LLC*, No. 06 CIV. 15319NRB, 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008) (granting alternative service because defendant "has actual notice of this action and, thus, as a practical matter, the purpose of the service requirement has already been accomplished."); *GLG Life*, 287 F.R.D. at 267 ("given that service via the Hague Convention would be a pointless and lengthy exercise, an order of alternative service is justified"). Indeed, Plaintiffs have already served Defendants Barraford and Nine Realms, and considering Thorbjornsen's relationship with the other Defendants as business partners, co-founders, and core developers of THORChain, Thorbjornsen likely already has actual notice of this action through the other Defendants. Furthermore, after Barraford was served in the United States, Thorbjornsen changed his usual flight pattern in Australia, making the surveillance team reasonably certain that Thorbjornsen was aware of Plaintiffs' efforts to track him down and was evading service. (Cooper Decl. ¶ 7). Seth Chin of the Chin Property Group, the real estate agency through which Defendant leased Property 3, also informed Plaintiffs' process server that he would contact Thorbjornsen about the service attempt. (*See* Ex. 3). Additionally, Plaintiffs' counsel sent a demand letter regarding this action to Thorbjornsen on June 10, 2025 using his personal email address, to which he responded on June 21, 2025, confirming that Thorbjornsen actively uses this email address. (*See* Ex. 1). Plaintiffs' counsel then used this same email address to send a copy of the Summons and Amended Complaint to Thorbjornsen on March 4, 2026 and March 10, 2026. (*See* Ex. 5).

Service is merely a formality at this point, and given that Defendants Barraford and Nine Realms have already been served, and their motions to dismiss have already been filed (*see* ECF Nos. 51, 53), authorizing alternative service on Thorbjornsen is necessary to prevent further delays. Rather than continue down a path that would likely accomplish nothing other than indefinitely delaying the proceedings against Thorbjornsen, Plaintiffs instead seek the Court's permission to

effectuate service through the reasonable alternative methods described in this motion.

## II. ALTERNATIVE SERVICE BY CERTIFIED MAIL, EMAIL, AND SOCIAL MEDIA IS PROPER UNDER FRCP 4(f)(3)

The Hague Convention, an international agreement to which Australia is a party, does not prohibit service by certified mail, email, and social media. Service by these means is also reasonably calculated to provide notice and therefore comports with constitutional due process under the circumstances. Accordingly, the Court may authorize service on Thorbjornsen by certified mail, email, and direct message on Thorbjornsen's X account.

### A. Australia Does Not Oppose Service by Certified Mail, Email, and Social Media.

Australia is a party to the Hague Convention, meaning Thorbjornsen may be served in accordance with the Hague Convention's rules. *See* Fed. R. Civ. P 4(f)(3) ("an individual . . . may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement"). The Hague Convention does not explicitly prohibit service through certified mail, email, and social media, and service by these means is permitted "[p]rovided that the State of destination does not object" to it. *See* Convention on the Ser. Abroad of Jud. & Extrajudicial Documents in Civ. or Com. Matters Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, art. 10(b).

Courts in this District have upheld repeatedly alternative service via certified mail, email, and social media as complying with the Hague Convention where the receiving country raises no objection. *See F.T.C. v. PCCare247 Inc.*, No. 12 CIV. 7189 PAE, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (upholding service of process by email and Facebook because receiving country has not objected to it); *Zanghi v. Ritella,* 2020 WL 589409, at *6 ("The Hague Convention does not prohibit service on a foreign defendant's U.S. counsel or service by email"). In its Hague Convention Declaration, Australia explicitly stated that it does not

object to service by certified mail and made no objections to service by email or social media. *See* Convention on the Ser. Abroad of Jud. & Extrajudicial Documents in Civ. or Com. Matters. Nov.15, 1965, [2010] A.T.S 19, art. 5 ("Australia does not object to service by postal channels, where it is permitted in the jurisdiction in which the process is to be served"). Because Australia has not objected to service by certified mail, email, or social media, such methods are consistent with the Hague Convention and should therefore be authorized. *XYZ Corp v. Individuals, Partnerships & Unincorporated Associations Identified in Schedule A*, No. 24 CIV. 1962 (LGS), 2024 WL 1579910, at *2 (S.D.N.Y. Apr. 11, 2024) (upholding service of process by email to Australian and Latvian defendants as comporting with the requirements of the Hague Convention).

**B. Service by Certified Mail, Email, and Social Media Comports with Due Process.**

Alternative service under FRCP 4(f)(3) must comport with constitutional notions of due process. *Zanghi v. Ritella*, 2020 WL 589409, at *6. To satisfy constitutional notions of due process, Plaintiffs must show that an alternative method of service "is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*.

Within this jurisdiction, service by certified mail satisfies due process notice requirements where, as here, the plaintiffs have identified and confirmed the defendant's home address. *See In re BRF S.A. Sec. Litig.*, No. 18-CV-2213 (PKC), 2019 WL 257971, at *5 (S.D.N.Y. Jan. 18, 2019) (granting alternative service via certified mail to plaintiff who identified defendants' home addresses); *Ackermann v. Levine,* 788 F.2d 830, 841 (2d Cir. 1986) ("service by registered mail does not violate constitutional due process"). Plaintiffs have obtained the addresses of Thorbjornsen's current and previous residential properties and hired

Australian process servers to attempt service at each of these properties. Therefore, the Court should authorize alternative service by certified mail.

Serving Thorbjornsen by email using his personal email address would also satisfy due process requirements. Service by email comports with due process when the plaintiff demonstrates that the email is likely to reach the defendant. *See United States v. Besneli*, 2015 WL 4755533, at *2 (S.D.N.Y. Aug. 12, 2015) (granting motion for alternative service under FRCP 4(f)(3) because defendant was "likely to receive the email"); *ShelterZoom Corp. v. Goroshevsky*, No. 19-CV-10162 (AJN), 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020) (same).

Here, service via Thorbjornsen's personal email address is likely to reach Thorbjornsen. On June 21, 2025, Thorbjornsen responded to a demand letter sent by McDermott Will & Schulte to his personal email address, which confirms that the personal email address used is active. (Cooper Decl. ¶ 3; Ex. 1 (Email dated June 21, 2025 from John-Paul Thorbjornsen to Plaintiffs' counsel)); *see also Doe v. Hyassat,* 342 F.R.D. 53, 57 (S.D.N.Y. 2022) (upholding service by email for plaintiffs who identified that Defendant had recently used the email address). Finally, on March 4, 2026, and again on March 10, 2026, Plaintiffs' counsel sent the Summons and Amended Complaint to Thorbjornsen's personal email address to confirm whether he would accept service electronically. (Cooper Decl. ¶ 8; Ex. 5). Plaintiffs' counsel did not receive a notification that the email was undeliverable. These facts demonstrate that the personal email address the Summons and Amended Complaint were sent to was successfully transmitted to Thorbjornsen, which satisfies the notice requirements of due process. *See Philip Morris,* 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007) (upholding email service where plaintiffs indicated that emails sent to defendant's email address were

successfully transmitted and, through their own investigation, were likely to reach defendants).

In tandem with service via certified mail and email, effecting service through direct messaging on Thorbjornsen's verified X account would also satisfy notice requirements. Serving a defendant through their social media accounts is permissible when the account is a "known social media account" that belongs to the defendant. *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, No. 20CV2807(DLC), 2020 WL 4586819, at *2 (S.D.N.Y. Aug. 10, 2020). Service via social media is particularly appropriate where the identified account not only belongs to the defendant but is also actively maintained and controlled by the defendant. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD)(SN), 2023 WL 2966563, at *1 (S.D.N.Y. Apr. 17, 2023) (authorizing service via "sending social media messages to Twitter accounts purportedly controlled by" defendants). When a defendant "run[s] and online business, communicate[s] with customers via email, and advertise[s] their business" on their social media accounts, service via email and social media is reasonably calculated to provide notice. *See PCCare247 Inc.*, 2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013).

Plaintiffs' counsel has identified Thorbjornsen's known social media accounts through Thorbjornsen's own Linktree,[4] which links to his various verified accounts. (Cooper Decl. ¶ 9). The X account listed on his Linktree links to Thorbjornsen's main account (@jpthor) in its profile bio. This main account bears X's verification badge, indicating that the account has been authenticated by the platform as belonging to Thorbjornsen.

Thorbjornsen's is also particularly active on X, where he regularly uses his account to communicate with the public and advertise THORChain. Thorbjornsen maintains an active presence on X as of the date of this filing; he has made thousands of posts on his verified X

[4] Linktree is an online platform that allows users to compile and share links to multiple social media accounts on a single webpage.

account and often posts daily or multiple times per day. (Cooper Decl. ¶ 9). Thorbjornsen also used his X account to communicate with his followers and advertise THORChain. (SAC ¶¶ 19, 58, 196).

Accordingly, service of the Summons and Amended Complaint via direct message to these verified social media accounts is reasonably calculated to reach Thorbjornsen.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request an Order authorizing service on Australian Defendant Thorbjornsen pursuant to FRCP 4(f)(3): (1) by certified mail to Thorbjornsen's known residential addresses (390 Edward Road, Chirnside Park VIC 3116; 104 Cullen Bay Crecent, Larrakeyah NT; and 97 Cullen Bay Crecent, Larrakeyah NT 08290); (2) by email to Thorbjornsen's known email address (jpthor@protonmail.com); and (3) by direct message through Thorbjornsen's verified X (formerly Twitter) account (@jpthor).

Dated: May 8, 2026
New York, New York.

**MCDERMOTT WILL & SCHULTE LLP**

*_/s/ Benjamin F. Cooper_*
Benjamin F. Cooper
Joseph B. Evans
M. Elias Berman

One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
bcooper@mcdermott.com
jbevans@mcdermottlaw.com
eberman@mcdermottlaw.com

*Attorneys for Plaintiffs Jamie Shiller, Brian Kornrumpf, Halsey Richartz, Amnon Melzer, Ryan Treat, Geoff Frink, Jeremy Grainger, Randy Coran, Brian Dubs, Guy Zilber, Curtis Hale, Dirk Weiler-Thelemann, Darrell Smith, Chad Mielke, and Robert Christiansen.*